# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.J.G.G., <br><br> Petitioner, <br><br> v. <br><br> MINGA WOFFORD, et al.,[1] <br><br> Respondents. | Case No. 1:25-cv-01718-JLT-EPG-HC <br><br> FINDINGS AND RECOMMENDATION TO GRANT PRELIMINARY INJUNCTION <br><br> (ECF No. 2) <br><br> ORDER GRANTING PETITIONER'S MOTON TO PROCEED VIA PSEUDONYM <br><br> (ECF No. 3) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons stated herein, the undersigned recommends granting a preliminary injunction and ordering Petitioner's immediate release.

---

[1] Respondents argue that the "Court should dismiss all respondents other than the Warden of the Mesa Verde ICE Processing Center because the only proper respondent to a habeas petition is the custodian having immediate custody of the petitioner." (ECF No. 10 at 1 n.1.) "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024). Although Doe held that "*Padilla* set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition," 109 F.4th at 1197, Doe did not necessarily preclude naming more than one respondent so long as the immediate custodian is named. Given that Petitioner has named her immediate custodian as a Respondent, the undersigned recommends declining to dismiss all the other named Respondents.

# I.

# BACKGROUND

Petitioner, a citizen of Ecuador, left Ecuador due to persecution he suffered on account of his race and ethnicity as a member of the Kichwa Indigenous group. (ECF No. 1-2 at 1–2.[2]) On August 27, 2023, Petitioner crossed the United States border through Arizona and turned himself over to immigration officers. He was immediately detained. (Id. at 2.)

On September 19, 2023, U.S. Citizenship and Immigration Services ("USCIS") conducted a credible fear interview and determined that Petitioner had a credible fear of torture. (ECF No. 1-2 at 2; ECF No. 10-1 at 10–15.) After this interview, Petitioner was released from custody.[3] (ECF No. 1-2 at 2.) When Petitioner was released, he was fingerprinted and told to appear for a hearing at the immigration court in Boston in February 2026. (Id. at 2–3.) Petitioner did not receive any conditions for his release, was not asked to pay a bond, and was not told to report regularly to Immigration and Customs Enforcement ("ICE").[4] Petitioner was only asked for a phone number and an address.[5] (Id. at 3.)

About two months after his release at the border, Petitioner tried to check his A-number in the online system, but he could not find anything. He went to an immigration "consultant" to ask about getting a work permit. She told Petitioner she could not help because his A-number did not appear in the system and that he did not have an open case. Petitioner did not understand and kept waiting to talk with the immigration court at his 2026 hearing. (ECF No. 1-2 at 3.)

On July 13, 2025, Petitioner was arrested in Buffalo, New York, while he was helping a friend move. Petitioner was parking the van "when about four unmarked cars, with no visible identification, showed up, and six or seven agents got out." (ECF No. 1-2 at 3.) "The agents did not show any documentation or identify themselves[.]" (Id. at 4.) Petitioner was taken to an

---

[2] Page numbers refer to the ECF pagination stamped at the top of the page.
[3] Petitioner claims that he "remained in detention for around two months" and "[a]fter two months, [he] had a credible fear interview." (ECF No. 1-2 at 2.) The motion for TRO repeatedly references October 19, 2023 as the date of Petitioner's release from custody. (ECF No. 2 at 8, 14, 17, 21–23.) However, documentation of the credible fear interview establishes that the interview occurred on September 19, 2023.
[4] Neither Petitioner nor Respondents have provided any documentation regarding Petitioner's release.
[5] Petitioner's address has remained the same ever since he entered the United States. (ECF No. 1-2 at 3.)

2

office in Buffalo and after answering questions, he was moved to Batavia Detention Center where he stayed until September 8, 2025. (ECF No. 1-2 at 3.)

On August 13, 2025, the Department of Homeland Security ("DHS") issued a notice to appear ("NTA"), charging Petitioner with removability under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (ECF No. 10-1 at 5–7.) On August 26, 2025, Petitioner had his first court hearing in front of an immigration judge, who informed Petitioner for the first time that he needed to file an asylum application. Petitioner was given a form and told to complete it by the next hearing scheduled for September 11, 2025. (ECF No. 1-2 at 4.) Before the hearing took place, Petitioner was transferred, and the hearing date was changed to October 8. (Id. at 5.) Petitioner left Batavia the night of September 8, 2025, moved through several places, and on September 11 or 12, eventually arrived at Mesa Verde ICE Processing Center where Petitioner is still detained. (ECF No. 1-2 at 5.)

On December 3, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) The Court converted the motion for TRO to a motion for preliminary injunction, ordered further briefing, and referred the motion for preliminary injunction to the undersigned. (ECF No. 6.) On December 23, 2025, Respondents filed an opposition to the motion for TRO and the habeas petition. (ECF No. 10.) On December 28, 2025, Petitioner filed a reply in support of the motion for TRO. (ECF No. 11.)

## II.

## DISCUSSION

### A. Motion to Proceed via Pseudonym

"[M]any federal courts, including the Ninth Circuit, have permitted parties to proceed anonymously when special circumstances justify secrecy." Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000). "In this circuit, we allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary ... to protect a person from harassment, injury, ridicule or personal embarrassment.'" Id. at 1067–68 (quoting United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for

3

1  anonymity outweighs prejudice to the opposing party and the public's interest in knowing the

2  party's identity." Advanced Textile Corp., 214 F.3d at 1068.

> To determine whether to allow a party to proceed anonymously when the opposing party has objected, a district court must balance five factors: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, ... (3) the anonymous party's vulnerability to such retaliation," (4) the prejudice to the opposing party, and (5) the public interest.

7  Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est., 596 F.3d 1036, 1042 (9th Cir. 2010)

8  (quoting Advanced Textile Corp., 214 F.3d at 1068).

9  Petitioner has moved to proceed using his initials because requiring Petitioner "to disclose his identity publicly risks further traumatizing H.J.G.G. and puts him at risk of harassment and persecution." (ECF No. 3 at 5.) Specifically, Petitioner "has a pending asylum claim based on harm and mistreatment he experienced in Ecuador because of his race and ethnicity as a man of the Kichwa Indigenous group" and "litigation may require disclosure of H.J.G.G.'s private mental and physical health information," which "is highly personal, and disclosure of such information could lead to stigma and further harm for H.J.G.G." (ECF No. 3 at 2–3.) Respondents have not filed an opposition to the motion to proceed via pseudonym.

17  Courts have granted motions to file pseudonymously based on the petitioners' fears of persecution and retaliation should their identities be revealed. See, e.g., Doe v. Becerra, 732 F. Supp. 3d 1071, 1091 (N.D. Cal. 2024) ("Given the circumstances of Mr. Doe's petition and his allegations that he will face torture or death if he returns to Mexico, the Court previously granted Mr. Doe's motions to proceed under pseudonym[.]"); E.O.P. v. Andrews, No. 1:25-cv-00721-SKO (HC), 2025 WL 1735396, at *1 (E.D. Cal. June 23, 2025); Doe v. Wofford, No. 1:24-cv-00943-EPG-HC, 2025 WL 1305859, at *4 (E.D. Cal. May 6, 2025); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 871334, at *1 (E.D. Cal. Mar. 19, 2025). The Court finds that upon balance, the factors weigh in favor of Petitioner. Accordingly, the Court will grant Petitioner's motion to proceed via pseudonym.

27  ///

28  ///

**B. Preliminary Injunction Legal Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Glossip v. Gross, 576 U.S. 863, 876 (2015) (internal quotation marks omitted) (quoting Winter, 555 U.S. at 20). The Ninth Circuit "has adopted the 'serious questions' test—a 'sliding scale' variant of the *Winter* test—under which a party is entitled to a preliminary injunction if it demonstrates":

> (1) "serious questions going to the merits," (2) "a likelihood of irreparable injury," (3) "a balance of hardships that tips sharply towards the plaintiff," and (4) "the injunction is in the public interest." *Id.* at 1135.[6] As to the first factor, the serious questions standard is "a lesser showing than likelihood of success on the merits." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1190 (9th Cir. 2024) (footnote added).

**C. Likelihood of Succeeding on the Merits**

Petitioner contends that he "is likely to succeed on his claim that, in his particular circumstances, his current detention is unlawful because the Due Process Clause of the Constitution prevents Respondents from re-arresting him without first providing a pre-deprivation hearing before a neutral adjudicator where the government demonstrates by clear and convincing evidence that there has been a material change in circumstances such that he is now a danger or a flight risk." (ECF No. 2 at 15.) Petitioner notes that "[f]ederal district courts in California have repeatedly recognized that the demands of due process and the limitations on DHS's authority to revoke a noncitizen's bond or parole set out in DHS's stated practice and *Matter of Sugay* both require a pre-deprivation hearing for a noncitizen on ICE release, like H.J.G.G., *before* ICE re-detains him." (Id. at 16.)

---

[6] Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

5

Respondents argue that Petitioner is unlikely to succeed on the merits because: (1) the Supreme Court has upheld the constitutionality of mandatory detention for certain noncitizens and Petitioner, as an "applicant for admission," is mandatorily detained pursuant to INA § 235(b)(1)(B)(ii), 8 U.S.C. § 1225(b)(1)(B)(ii), while his asylum application is being considered; (2) Petitioner's release from DHS custody did not change his status as an applicant for admission within the meaning of 8 U.S.C. § 1225(b), nor does the Due Process Clause entitle him to a predetention hearing; and (3) changed circumstances were not required for re-detention; and (4) the Mathews factors do not govern due process claims raised by detained aliens and do not mandate a remedy. (ECF No. 10 at 4–12.)

Respondents argue that "detention during immigration proceedings is 'a constitutionally valid aspect of the deportation process.'" (ECF No. 10 at 4 (quoting Demore v. Kim, 538 U.S. 510, 523 (2003)).) "While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens *is always constrained by the requirements of due process*[.]" Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017) (emphasis added). Demore's rejection of a facial challenge to the constitutionality of 8 U.S.C. § 1226(c), a provision not at issue in this matter, does not render Petitioner's detention constitutional.

Respondents also argue that "Petitioner's due process rights are limited to whatever statutory rights Congress provides." (ECF No. 10 at 5.) In support of this position, Respondents rely on Kleindienst v. Mandel, 408 U.S. 753 (1972), Landon v. Plasencia, 459 U.S. 21, 32 (1982), Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206 (1953), United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537 (1950), and DHS v. Thuraissigiam, 591 U.S. 103 (2020). These cases addressed due process rights *with respect to admission*, as evidenced by the language from these cases quoted by Respondents. Here, however, Petitioner is not raising claims regarding the admission process. See Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) ("Defendants ask the Court to extract from Thuraissigiam a broad rule that any inadmissible noncitizen possesses only those due process rights afforded to them by statute, regardless of the nature of their status or the relief they seek.

6

But such a conclusion is untethered to the claim in Thuraissigiam and the Court's reasoning. Thuraissigiam's discussion of due process is necessarily constrained to challenges to admissibility to the United States."), appeal filed, No. 24-2801 (9th Cir. argued May 21, 2025); Castillo v. Wofford, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding Barrea-Echavarria v. Rison, 44 F.3d 1441 (9th Cir. 1995) (en banc) and Thuraissigiam "inapposite and reject[ing] Respondents' argument that 'entry fiction' cases guide the analysis for cases not involving an expedited removal process"); J.E.H.G. v. Chesnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *10 n.10 (E.D. Cal. Dec. 9, 2025) (rejecting similar government argument); Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *3–4 (E.D. Cal. Dec. 8, 2025) (rejecting similar government argument).

     8 U.S.C. § 1226(a) "is the default detention statute for noncitizens in removal proceedings." Avilez, 69 F.4th at 529. Detention under § 1226(a) "is discretionary" and "provides for release on bond or conditional parole." Avilez, 69 F.4th at 529. The Supreme Court has described 8 U.S.C. § 1225 as follows:

> Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of

> persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).
>
> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

Jennings v. Rodriguez, 583 U.S. 281, 287–88 (2018).

> Until this year, DHS has applied section 1226(a) and its regime of discretionary release and review of detention "to the vast majority of noncitizens allegedly in this country without valid documentation"—a practice codified by regulation. *Id.* As early as 1997, in the regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Immigration and Naturalization Service and the Executive Office for Immigration Review stated that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. at 10323. The government's briefing in this case acknowledges that its position historically was that section 1226(a) was "an available detention authority for aliens [present without being admitted or paroled] placed in full removal proceedings under § 1229a." (Dkt. No. 16 ("Opp.") at 12.)
>
> However, the government now disavows its prior position in light of subsequent "legal developments," including its 2025 designation "restor[ing] the scope of expedited removal to the fullest extent authorized by Congress," 90 Fed. Reg. at 8139. (Opp. at 12.) It contends that section 1225 is "the sole applicable detention authority for *all* applicants for admission" and asserts that all applicants for admission are "subject to the mandatory detention framework" of section 1225(b). (Opp. at 12, 14.)

Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, 2025 WL 2741654, at *4 (N.D. Cal. Sept. 26, 2025), appeal filed, No. 25-7472 (9th Cir. filed Nov. 26, 2025).

///

1    "Here in the Eastern District of California, recent decisions have largely rejected the
2    government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for
3    admission.'" Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *2
4    (E.D. Cal. Nov. 17, 2025) (citing Lepe v. Andrews, No. 1:25-cv-01163-KES-SKO (HC), --- F.
5    Supp. 3d ----, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); Rodriguez v. Kaiser, No. 1:25-cv-
6    01111-KES-SAB (HC), 2025 WL 2855193 (E.D. Cal. Oct. 8, 2025); Ortiz Donis v. Chestnut,
7    No. 1:25-cv-01228 JLT SAB, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); Menjivar Sanchez v.
8    Wofford, No. 1:25-cv-01187-SKO (HC), 2025 WL 2959274 (E.D. Cal. Oct. 17, 2025)). Contra
9    Valencia, 2025 WL 3205133, at *2 (declining to follow said cases, finding "petitioner is unlikely
10   to prevail on his statutory arguments," and denying temporary restraining order); Alonzo v.
11   Noem, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284, at *3, 5 (E.D. Cal. Nov. 17, 2025)
12   (finding that "[n]otwithstanding the majority view," petitioner failed to make "a sufficient
13   showing of the likelihood of success on his statutory claim" yet noting "[t]his finding should not
14   be understood an affirmative endorsement of the view that respondents' interpretation of
15   § 1225(b)(2)(A) -- which is in line with the expansive understanding of mandatory detention
16   applicability -- is correct" but rather "only that petitioner has failed to show a likelihood of
17   success on it").

18   Additionally, "[o]ther district courts have also reached the result that Section 1226(a), not
19   Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the
20   United States." Valencia, 2025 WL 3205133, at *2 (citing Garcia v. Noem, No. 25-cv-02180-
21   DMS-MMP, --- F.Supp.3d ----, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Martinez v. Noem,
22   No. EP-25-CV-430 KC, 2025 WL 2965859 (W.D. Tex. Oct. 21, 2025) (acceptance of DHS's
23   new interpretation represents "a minority view"); Buenrostro-Mendez v. Bondi, No. CV H-25-
24   3726, 2025 WL 2886346 (S.D. Tex. Oct. 7, 2025)). Contra Chavez v. Noem, No. 3:25-cv-02325-
25   CAB-SBC, --- F.Supp.3d ----, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); Mejia Olalde v.
26   Noem, No. 1:25-cv-001568-JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025).

27   This Court will follow the majority approach in finding that "Respondents' proposed
28   interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2)

disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025). See Paz Aguilera v. Albarran, No. 1:25-cv-01619 JLT SAB, 2025 WL 3485016, at *9 (E.D. Cal. Dec. 4, 2025) ("acknowledg[ing] that two recent decisions in this district accepted Respondents' new interpretation of § 1225(b)(2)," but distinguishing those decisions because "unlike Petitioner, the petitioners in *Valencia* and *Alonzo* had never been encountered, let alone processed, by immigration officials, and had not been released on recognizance pending completion of Section 240 removal proceedings").

### 1. Procedural Due Process

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

#### a. Liberty Interest

Petitioner contends that "[s]ince October 19, 2023, H.J.G.G. has exercised that freedom under DHS's own grant of parole," and thus, "he retains a weighty liberty interest under the Due Process Clause of the Fifth Amendment in avoiding unlawful re-incarceration," citing Young v. Harper, 520 U.S. 143, 146–47 (1997), Gagnon v. Scarpelli, 411 U.S. 778, 781–82 (1973), and Morrissey v. Brewer, 408 U.S. 471, 482–83 (1972). (ECF No. 2 at 17.)

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in

his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025). Accordingly, the Court finds that Petitioner is likely to demonstrate that he has a protected liberty interest in remaining out of immigration custody.

### b. Mathews Test

Respondents contend that "*Mathews* does not, however, appear to govern due process claims raised by detained aliens. Indeed, the Supreme Court has not adjudicated due process challenges to detainment through the *Mathews* factors despite several opportunities," citing

11

1  Rodriguez Diaz v. Garland, 53 F.4th at 1189, 1206, 1214 (9th Cir. 2022) (Bumatay, J.,
2  concurring). (ECF No. 10 at 10–11.) However, in Rodriguez Diaz, which concerned a noncitizen
3  detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional
4  because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond
5  hearing at which the government bears the burden of proof by clear and convincing evidence,"
6  the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the
7  Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal
8  proceedings," and finding "*Mathews* remains a flexible test that can and must account for the
9  heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53
10 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v.*
11 *Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework
12 to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219
13 (Wardlaw, J., dissenting). See Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025
14 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) ("Many district courts in the Ninth Circuit have
15 found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty
16 interest in their continued release, entitling them to certain due process protections, the extent of
17 which are determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335
18 (1976)."); J.E.H.G., 2025 WL 3523108, at *10–11 (finding "liberty interest created by the fact
19 that the Petitioner in this case was released on recognizance" and "[t]hus, the Court must
20 evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to
21 determine whether the procedures (or lack thereof) that have been applied to Petitioner are
22 sufficient to protect the liberty interest at issue").

23     Based on the foregoing, the Court finds that the Mathews test is appropriate in this
24 instance. In Mathews, the Supreme Court held that "identification of the specific dictates of due
25 process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action;
> second, the risk of erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez, 872 F.3d at 993 (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" J.A.E.M., 2025 WL 3013377, at *7 (alterations in original) (quoting A.E., 2025 WL 1424382, at *5). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) (alteration in original) (quoting Zadvydas, 533 U.S. at 690). Petitioner's release on recognizance necessarily required a determination that he posed neither a flight risk nor a danger. Rocha Chavarria, 2025 WL 3533606, at *4 (citing 8 C.F.R. § 212.5(b); Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025)); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018). Respondents do not argue that Petitioner is now a flight risk or a danger to the community. "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" Sharan S., 2025 WL 3167826, at *10 (quoting A.E., 2025 WL 1424382, at *5).

With respect to the third and final factor, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a

13

1  hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d
2  963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-
3  cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government
4  has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued
5  removal orders are promptly executed, the Government's interest in detaining Petitioner without
6  providing an individualized bond hearing is low."). Courts generally have found that the cost of
7  providing a custody hearing is relatively minimal, and there is nothing in the record before this
8  Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or
9  administratively burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court,
10 custody hearings are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at
11 1094)).

12  On balance, the Mathews factors show that Petitioner is entitled to notice and a bond
13 hearing and "[t]hat hearing should have occurred before petitioner was re-detained." Carmen
14 G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec.
15 8, 2025).

> "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty ...."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

25 Carmen G.C., 2025 WL 3521304, at *7.

26  At such a pre-deprivation hearing, the government bears the burden of proving by clear
27 and convincing evidence that Petitioner is a danger to the community or a flight risk such that re-
28 detention is warranted. See Martinez v. Clark, 124 F.4th 775, 784–86 (9th Cir. 2024) (confirming

that the government bears the "clear-and-convincing burden of proof" at an immigration bond hearing ordered pursuant to the Due Process Clause); Carmen G.C., 2025 WL 3521304, at *7 ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence."); J.E.H.G., 2025 WL 3523108, at *14 ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

Based on the foregoing, Petitioner has demonstrated that he is likely to succeed in showing that he has a strong liberty interest in remaining out of custody, that the risk of erroneous deprivation will be meaningfully reduced by requiring notice and a pre-detention hearing before a neutral decisionmaker, and that the governmental burden in providing such procedure is quite minimal.[7]

**D.  Likelihood of Suffering Irreparable Harm**

"In addition to a likelihood of success on the merits, '[a] plaintiff seeking a preliminary injunction must establish . . . that he is likely to suffer irreparable harm in the absence of preliminary relief.'" Hernandez, 872 F.3d at 994 (quoting Winter, 555 U.S. at 20). In Hernandez, the Ninth Circuit found the district court did not abuse its discretion in entering an injunction that required immigration officials to consider financial circumstances and alternative conditions of release at the bond hearings of a class of noncitizens in removal proceedings who were detained pursuant to 8 U.S.C. § 1226(a). Hernandez, 872 F.3d at 981–82. With respect to the second Winter factor, the Ninth Circuit found:

> Here, Plaintiffs have established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time.
>
> "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v.*

---

[7] In light of this conclusion, the Court declines to address Petitioner's substantive due process claim.

>
> *Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).
> Thus, it follows inexorably from our conclusion that the
> government's current policies are likely unconstitutional—and thus
> that members of the plaintiff class will likely be deprived of their
> physical liberty unconstitutionally in the absence of the
> injunction—that Plaintiffs have also carried their burden as to
> irreparable harm.

Hernandez, 872 F.3d at 994–95. Similarly, here, the Court has concluded that Petitioner is likely to succeed on the merits of his due process claim, and thus, Petitioner has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time" in the absence of preliminary relief. Hernandez, 872 F.3d at 994. See Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation.").

### E. Balance of Equities and the Public Interest

To obtain a preliminary injunction, Petitioner must also demonstrate that "the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20. "When, like here, the nonmovant is the government, the last two *Winter* factors 'merge.'" Baird, 81 F.4th at 1040 (citing Nken v. Holder, 556 U.S. 418, 435 (2009); Roman v. Wolf, 977 F.3d 935, 940–41 (9th Cir. 2020) (per curiam)). "A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." Baird, 81 F.4th at 1042. "Because 'public interest concerns are implicated when a constitutional right has been violated, . . . all citizens have a stake in upholding the Constitution,' meaning 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" Baird, 81 F.4th at 1042 (first quoting Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005); then quoting Riley's American Heritage Farms v. Elsasser, 32 F.4th 707, 731 (9th Cir. 2022)). "The government also 'cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.'" Baird, 81 F.4th at 1042 (quoting Zepeda v. INS, 753 F.2d 719, 727 (9th Cir. 1983)). Accordingly, the Court finds that the balance of equities tips in Petitioner's favor and that an injunction is in the public interest.

**F. Conclusion**

In sum, the Court finds that the requirements for issuing a preliminary injunction are satisfied. Accordingly, the undersigned recommends that the motion for preliminary injunction be granted.

The Court now turns to the appropriate remedy. "The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" Boardman v. Pac. Seafood Grp., 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009)). "'Status quo ante litem' refers to 'the last uncontested status which preceded the pending controversy.'" Boardman, 822 F.3d at 1024 (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)).

Courts in this district have taken differing approaches to the relief granted to petitioners who have been released, subsequently re-detained, and denied bond hearings based on the government's new interpretation of 8 U.S.C. § 1225(b). In some cases, the immediate release of the petitioner has been ordered. See, e.g., Ortiz Donis v. Chestnut, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *15 (E.D. Cal. Oct. 9, 2025) (ordering immediate release "because the government has no evidence that Mr. Ortiz poses a risk of flight or poses a danger to the community"); Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who had been released from immigration detention on parole, was arrested for theft but the case was resolved with community service and did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen G.C., 2025 WL 3521304 (ordering immediate release of petitioner who allegedly violated reporting requirements four times); Rocha Chavarria, 2025 WL 3533606 (ordering immediate release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention).

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G., 2025 WL 3523108 (ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz

17

Aguilera, 2025 WL 3485016 (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and was re-detained based on said violation); Sharan S., 2025 WL 3167826 (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

Here, there is nothing before this Court demonstrating that Petitioner is a flight risk or a danger to the community. Accordingly, the undersigned recommends that Petitioner be released from immigration detention.

### G. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The district court retains discretion 'as to the amount of security required, *if any*.'" Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011) (quoting Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009)). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003). "Courts regularly waive security in cases like this one," J.A.E.M., 2025 WL 3013377, at *9 (collecting cases), and given the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," Zepeda, 753 F.2d at 727, the undersigned recommends that no security be required.

## III.

## RECOMMENDATION & ORDER

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. Petitioner's motion for preliminary injunction (ECF No. 2) be granted.
2. Respondents be directed to immediately release Petitioner.
3. Respondents be enjoined and restrained from re-detaining Petitioner absent compliance with constitutional protections, which include at a minimum, predeprivation notice of at least seven days before a predeprivation hearing at which the government will bear the

burden of demonstrating by clear and convincing evidence that he is likely to flee or pose a danger to the community if not arrested.

Further, the Court HEREBY ORDERS that Petitioner's motion to proceed via pseudonym (ECF No. 3) is GRANTED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **December 29, 2025**          /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE